## GRYNBERG PRODUCTION CORPORATION

v.

**BRITISH GAS, P.L.C., British Petroleum Exploration Operating Company, Ltd., Jack L. Gregory, Atlantic Richfield Company, Inc., and TransWorld Resources Corporation.**

### No. 1: 92 CV 496.

United States District Court, E.D. Texas, Beaumont Division.

March 19, 1993.

Stephen D. Susman, Susman Godfrey, F. Eric Fryar, Neal S. Manne, Houston, TX, for plaintiff.

William Robert Pakalka, Layne Edwin Kruse, Rufus Wallingford, Fulbright & Jaworski, Houston, TX, Gilbert Irvine Low, Orgain Bell & Tucker, Beaumont, TX, for defendants British Gas, p.l.c. and Jack L. Gregory.

D. Allan Jones, Orgain Bell & Tucker, Beaumont, TX, for defendant Atlantic Richfield Co., Inc.

James William Mehaffy, Jr., Beaumont, TX, for defendant TransWorld Resources Corp.

## MEMORANDUM OPINION AND ORDER DENYING GRYNBERG PRODUCTION CORPORATION'S MOTION TO REMAND

SCHELL, District Judge.

CAME ON TO BE CONSIDERED plaintiff Grynberg Production Corporation's ("Grynberg") Motion to Remand, and the court, after reviewing the Motion, the responses in opposition and the pleadings of record, is of the opinion that this Motion should be DENIED.

The case underlying this removal battle is an involved and complicated dispute between Western corporations over rights to develop mineral resources located in the Republic of Kazakhstan. The weapons in this removal fight are the mountains of briefs and affidavits. The ammunition includes fraudulent joinder, procedural hurdles for removal, Texas choice of law principles, Texas tort law, Kazakhi tort law (and translations thereof), federal question jurisdiction over state law claims presenting a federal issue, federal common law governing international relations, the "act of state doctrine," and the

*Erie* doctrine. When the smoke clears and the dust settles, the court finds that the valid presence of a Texas defendant bars diversity removal, but the presence of several issues of the federal common law of international relations in the well-pleaded complaint allows federal question removal.

## OUTLINE OF CONTENTS

### I. BACKGROUND

A. *The Parties*

B. *Factual Allegations in Grynberg's Original Petition*

C. *Grynberg's Causes of Action*

### II. PROPRIETY OF REMOVAL ON DIVERSITY OF CITIZENSHIP GROUNDS

A. *British Gas and Gregory Must Establish Fraudulent Joinder of Both Gregory and TransWorld to Remove on Diversity Grounds*

　1. *Citizenship of Gregory and Trans-World bars diversity removal*

　2. *British Gas and Gregory allege fraudulent joinder of Gregory and Trans-World*

B. *Gregory Was Not Fraudulently Joined because Grynberg Has at least Some Possibility of Recovery against Gregory on at least One Claim*

　1. *Grynberg's Original Petition simply fails to allege the breach of tort duty claims against Gregory*

　2. *Grynberg's Original Petition fails to allege a conversion claim against Gregory*

　3. *Grynberg's Original Petition does allege fraud against Gregory*

　　a. **The alleged failure to satisfy Fed.R.Civ.P. 9(b) will not prevent consideration of the fraud claim**

　　b. **Grynberg's Original Petition satisfies Fed.R.Civ.P. 9(b)**

　4. *Texas law permits recovery against Gregory individually for fraud*

　　a. **In Texas, agents are individually liable for the torts they commit**

　　b. **Grynberg's claim is not merely an estoppel claim**

　5. *Even if Kazakhi law absolutely precludes recovery against Gregory, the chance that Texas law could apply makes joinder nonfraudulent*

　　a. **Under Texas choice of law principles, Kazakhstan law is likely to govern this transaction**

　　b. **The possibility that Texas law applies to the issue of employee tortfeasor liability makes joinder nonfraudulent**

　　　i. *Which law governs is an ambiguous question of law*

　　　ii. *The significance of the Texas contacts to the issue of employee tortfeasor liability could realistically outweigh the significance of the Kazakhstan contacts*

　6. *Even if Kazakhi law necessarily applies, British Gas and Gregory have failed to establish that there is no possibility of recovery*

### III. REMOVAL ON THE BASIS OF FEDERAL QUESTION

A. *Federal Jurisdiction Exists if Grynberg's Well–Pleaded State Law Claims Contain a Substantial Federal Issue*

　1. *Federal question jurisdiction extends to state law claims with a substantial federal issue*

　2. *Federal issues in a state law cause of action must be essential elements of the "well-pleaded complaint"*

　3. *The Original Petition's assertion that no federal issues are presented is not controlling*

### B. The Notice of Removal was Adequate

1. The notice of removal adequately stated grounds for removal

2. British Gas and Gregory have not asserted "new grounds" for removal

### C. Federal Question Jurisdiction Exists if a Question of International Relations Appears in Well–Pleaded State Law Claims

1. State law claims raising issues of international relations implicate federal common law for federal question jurisdiction purposes

2. Questions of international relations are almost always "substantial" in Smith-type cases

### D. Essential Elements of Some of Grynberg's State Law Claims, if Well–Pleaded, Turn on the Resolution of Federal Common Law Governing Foreign Relations

1. The well-pleaded complaint rule forecloses federal jurisdiction over the breach of contract claim and the breach of tort duty claims

2. Grynberg's well-pleaded claims for specific performance and other injunctive relief present issues of federal common law governing international relations

 a. Grynberg seeks equitable relief to obtain the rights in the Karachaganak Field

 b. The basic remedy of specific performance requires allegations that depend upon the application of federal common law governing international relations

 c. A well-pleaded claim for injunction under Texas law requires allegations that depend upon the application of federal common law governing international relations

 i. To state a claim for injunction in Texas, a well-pleaded petition must negative all reasonably inferable hypotheses which could prevent relief

 ii. Unequivocally, Texas state law alone determines what is and what is not necessary to state a claim for purposes of the "well-pleaded complaint" rule

 iii. To negative all reasonable inferences and hypotheses which might be fatal to injunctive relief, Grynberg's Original Petition must raise three substantial issues of international law

 d. The well-pleaded complaint rule means that the failure of Grynberg's Original Petition to raise these international relations issues does not defeat federal jurisdiction

 e. Federal question jurisdiction exists over an alternatively pleaded federal claim

3. Grynberg's well-pleaded conversion claim must allege issues of federal law governing international relations

 a. Conversion requires "unlawful and unauthorized" dominion over personal property in which Grynberg had an interest

 b. To establish an "unlawful and unauthorized" dominion, Grynberg must allege issues of federal international relations law

 c. Grynberg must allege questions of international law to allege that it has an interest in the converted property

### E. Supplemental Jurisdiction Exists over All Other Claims and Parties in this Case

## IV. CONCLUSION

## I. BACKGROUND

### A. The Parties

Grynberg Production Company, plaintiff, is a corporation incorporated in Colorado and with a principal place of business in Colorado. Jack Grynberg and Celeste Grynberg are its board of directors. Jack Grynberg is its principal shareholder.

TransWorld Resources Corporation ("TransWorld"), defendant, is a Colorado corporation with its principal place of business in Colorado. Coincidentally, Jack Grynberg and Celeste Grynberg are its board of directors. Jack Grynberg is its principal shareholder. It shares a business office with Grynberg Production Company.

British Gas, defendant, is a British corporation with its principal place of business in Britain.

Jack L. Gregory, defendant, is a citizen of Texas. He is an employee of British Gas.

British Petroleum Exploration Operating Company ("BP"), defendant, is a British corporation with its principal place of business in Britain.

Atlantic Richfield Company ("ARCO"), defendant, is a Delaware corporation with its principal place of business in California.

## B. *Factual Allegations in Grynberg's Original Petition*

This case involves a dispute between oil and gas exploration firms over rights to develop promising oil and gas fields in the Republic of Kazakhstan. Grynberg's Original Petition alleges the following facts. Grynberg is a small oil and gas exploration and production firm located in Colorado. During the 1980s, Grynberg recognized that the long term control over mineral resources in the Soviet Union would eventually devolve from the central Soviet government in Moscow and toward the individual republics. Grynberg began to develop business and political contacts within the republics in anticipation that the republics would ultimately hold the keys to the rich, proven, but as yet untapped hydrocarbon reserves. In particular, Grynberg developed contacts within the Soviet Republic of Kazakhstan.

At the end of 1989 and beginning of 1990, Grynberg focused its efforts on obtaining concessions in the Pricaspian Basin in northwestern Kazakhstan, and persuading other oil and gas exploration firms to form a consortium to jointly develop the hydrocarbon potential of the Pricaspian Basin. According to Grynberg, in April of 1990, the president of Kazakhstan privately told Jack Grynberg, the company's president, that he was assured of a major hydrocarbon award. Consequently, Grynberg intensified its efforts to form a consortium. Grynberg's intent was to have each participating company sign separate agreements with Grynberg that would define the Kazakhi portion of the Pricaspian Basin as an Area of Mutual Interest ("AMI"), give each company a right to participate in any opportunity in the AMI, and require that each company contribute a pro rata share to finance Grynberg's capital contribution. Repayment would be solely out of production.

In May 1990, Grynberg and British Petroleum Exploration Operating Company, Ltd., ("BP"), executed such an agreement. In June, the Republic of Kazakhstan issued a formal protocol authorizing Grynberg to undertake geological studies and to eventually explore and develop the Pricaspian Basin.

Also in June 1990, Kazakhi officials came to the United States for business discussions with prospective consortium members. At a dinner in Houston, Texas, Jack Gregory told Jack Grynberg on behalf of British Gas that British Gas had agreed to participate in the consortium. Three days later in California, Kazakhi officials informed Grynberg of a little known but extremely promising prospect in the AMI called the Karachaganak Field. Grynberg suggested to the officials that British Gas would be an ideal operator, and then informed British Gas of the vast potential of the Karachaganak Field. Two days after the that, the Kazakhi government issued a second protocol formally approving the formation of the consortium by Grynberg.

In August 1990, British Gas and Grynberg formally entered into an agreement. The agreement defined the AMI, and provided that of any opportunity awarded in the AMI, British Gas would receive 15%, Grynberg would receive 20%, and other parties would receive the remaining 65%. British Gas would finance 18.875% of Grynberg's interest. Of the remaining 65%, 40% would become BP's, and the leftover 25% has to be

assigned to new subscribers as a condition precedent of the agreement.

The agreement between British Gas and Grynberg contained the following clause: "Should this equity remain unallocated after a reasonable period of time then the attached agreement shall be null and void." Prior to signing, Jack Grynberg asked Jack Gregory what "reasonable period of time" meant. Gregory represented that it meant any time prior to a Kazakhi award of a major hydrocarbon interest. In addition, British Gas made clear its preference that Grynberg should not seek new members to allocate the leftover 25%, but instead should work on those already members of the prospective consortium.

Subsequently, Grynberg persuaded ARCO to take 15% of the unassigned interest. The remaining 10% was reserved for Maraven, a Venezuelan corporation, due to its prior participation in the consortium efforts. British Gas told Grynberg that when all 100% was allocated, the parties should meet and universalize the AMI agreement. British Gas further represented that it would do so as soon as the parties were finalized.

Unbeknownst to Grynberg, however, British Gas allegedly was secretly pursuing its own designs on the AMI, using the confidential information obtained from Grynberg. A series of meetings between the Kazakhis, Grynberg, and Maraven were scheduled for October 1990 in Kazakhstan. Grynberg persuaded the Kazakhis to permit British Gas to attend. Grynberg arranged meetings between top representatives of British Gas, including Jack Gregory and the Kazakhis, and Grynberg also facilitated easy entry into Kazakhstan. While there, British Gas allegedly held private meetings with the Kazakhis, and excluded Grynberg and Maraven. A secret protocol was signed.

British Gas repeatedly refused to divulge to Grynberg either the protocol or the nature of its contents. Instead, Gregory and others repeatedly assured Grynberg that the AMI agreement sufficiently protected Grynberg's interest.

On November 21, 1990, Maraven declined participation in the consortium. Many other companies in and out of the prospective consortium had expressed interest in taking Maraven's unallocated 10% interest. On November 22, 1990, British Gas wrote Grynberg to confirm that British Gas wanted the agreement finalized. On November 29, 1990, without any warning, British Gas declared that "a reasonable period of time" had elapsed and the AMI agreement was null and void due to the remaining unallocated 10%. The same day, Grynberg executed an agreement with TransWorld allocating the remaining 10%.

Subsequently, British Gas used the confidential information it acquired from Grynberg to develop the AMI. British Gas formed a joint venture with AGIP, an Italian government-owned company, to compete against Grynberg for the Karachaganak Field. Only parties with protocols with Kazakhstan were permitted to submit tenders for interests, and British Gas could not have done so but for Grynberg's efforts.

The central government in Moscow essentially collapsed in December 1991, and power devolved to the individual republics. In July 1992, the Republic of Kazakhstan awarded all rights to explore and develop the Karachaganak Field to British Gas/AGIP. British Gas/AGIP received the official award of the concession, have made a downpayment, and are finalizing the lease and concession documents. At no time has British Gas conveyed a 20% interest in the Karachaganak Field under the terms of the AMI agreement.

## C. *Grynberg's Causes of Action*

Grynberg filed suit in Texas state district court in Jefferson County, Texas against British Gas, Jack Gregory, ARCO, BP, and TransWorld. Jack Gregory and British Gas removed. In the Original Petition, Grynberg asserts several claims against the defendants. First, Grynberg asserts a breach of contract claim against British Gas alone for its breach of the AMI agreement. Grynberg seeks money damages, specific performance, or an injunction requiring British Gas to convey all

of its interest to Grynberg. Grynberg asserts tort claims of breach of fiduciary duty, breach of the duty of good faith and fair dealing, and breach of the duty of confidence. Due to their similarity, these claims will be referred to as "the breach of tort duty" claims. Grynberg also alleges fraud and conversion against British Gas and Jack Gregory. Finally, Grynberg seeks declaratory relief against British Gas, BP, ARCO, and TransWorld declaring the parties rights with respect to the Karachaganak Field.

British Gas and Gregory removed this action to this court. Removal is generally permitted where the plaintiff's complaint could have originally been filed in federal court. 28 U.S.C. § 1441(a). The defendants claim both diversity of citizenship jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331.

## II. PROPRIETY OF REMOVAL ON DIVERSITY OF CITIZENSHIP GROUNDS

### A. British Gas and Gregory Must Establish Fraudulent Joinder of Both Gregory and TransWorld to Remove on Diversity Grounds

#### 1. Citizenship of Gregory and TransWorld bars diversity removal

Jurisdiction under § 1332 must be complete; each plaintiff must be diverse from each defendant. *Strawbridge v. Curtis*, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806). In addition, even if diversity jurisdiction is present, removal on the basis of diversity is prohibited if one of the defendants who is properly served and joined is a citizen of the state in which the action is brought. 28 U.S.C. § 1441(b). In this case, these rules create impediments to removal on diversity grounds. Grynberg, a plaintiff in the declaratory judgment action, and TransWorld, a defendant in the same action, are both citizens of Colorado. Jack Gregory, a defendant in the tort claims, is a citizen of Texas, the forum state.

#### 2. British Gas and Gregory allege fraudulent joinder of Gregory and TransWorld

The removing defendants seek to avoid these impediments to removal by arguing that the joinder of TransWorld and Gregory in this lawsuit is "fraudulent," and therefore should be ignored for purposes of determining jurisdiction and removability. First, the removing defendants argue that Grynberg has no possibility of recovery against Gregory for the fraud, conversion, and breach of tort duty claims. Second, they argue that TransWorld is improperly aligned or fraudulently joined as a defendant in the declaratory judgment action. TransWorld has the same board of directors, principal stockholder, and business address as Grynberg.

■ "The removing party bears the burden of demonstrating fraudulent joinder." *Carriere v. Sears, Roebuck, & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990). Fraudulent joinder must be established by clear and convincing evidence. *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir.1962), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964). The standard for determining whether a particular joinder is fraudulent is well established:

> After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned.

*Carriere*, 893 F.2d at 100.

### B. Gregory Was Not Fraudulently Joined because Grynberg Has at least Some Possibility of Recovery against Gregory on at least One Claim

■ This court finds that the joinder of Gregory is not fraudulent on at least the fraud claim, and therefore removal of the entire action on diversity grounds is improper. It is unnecessary to decide whether TransWorld was fraudulently joined or improperly aligned as a defendant in the declaratory judgment action.

At the outset, the court acknowledges the choice of law problem involved in this case. Many of the events in this lawsuit occurred in the Republic of Kazakhstan. The choice of law issue is central because which law governs may determine whether Grynberg

has any possibility of recovery against Gregory. At first, both sides in this removal dispute examined Grynberg's claims against Gregory under Texas law. Eventually, both sides addressed the applicability and effect of Kazakhi law. This court will: (1) examine whether some of the claims against Gregory were even alleged at all in the Original Petition; (2) examine under Texas law those claims it believes were alleged against Gregory; and (3) analyze both the correctness and relevance of the removing defendants' claim that Kazakhi law precludes recovery against a employee who commits tortious acts in the course of his or her employment.

The court believes that the Original Petition simply fails to allege a cause of action against Gregory for conversion or for the breach of tort duty. The court does find that the fraud claim is alleged against Gregory. This court ultimately concludes the following as to the fraud claim: (1) Texas law permits recovery against Gregory for fraud; (2) even if Kazakhi law did absolutely preclude recovery against Gregory, the choice between Texas and Kazakhi law is in itself an ambiguous question of law to be resolved in Grynberg's favor; (3) Kazakhi law does not *absolutely* preclude any possibility of recovery against Gregory.

1. *Grynberg's Original Petition simply fails to allege the breach of tort duty claims against Gregory*

Regardless of whether Texas or Kazakhi law applies to Grynberg's claims against Gregory, however, Grynberg has not demonstrated any possibility of recovery against Gregory as to the breach of fiduciary duty claims, breach of confidence claims, and the breach of the duty of good faith and fair dealing claims. With respect to those claims, Gregory was acting as the agent of British Gas. Grynberg is certainly correct in its assertion that Texas law permits recovery against an agent who commits torts, even if those torts are committed on behalf of a principal. *See, e.g., Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 375 (Tex. 1984). The petition, however, simply fails to

allege that Gregory committed any of these torts. Paragraphs 36 through 38 of the original petition read:

### C. Breach of Fiduciary Duty (Against British Gas and Gregory)

36. Because of the high degree of trust and confidence inherent in the relationship between Grynberg and *British Gas* in the attempt to obtain a concession from the Government of Kazakhstan, and because of the nature of the agreement between the parties, *British Gas owed Grynberg a fiduciary duty.* By *its* actions stated above, *British Gas,* through the actions of Gregory and others, breached *its* fiduciary duty to Grynberg.

37. Because of *British Gas's breach of fiduciary duty,* Grynberg has been damaged by the loss of its interests in the Karachaganak Field. Grynberg is therefore entitled to all actual damages proximately caused by *British Gas's breach of fiduciary duty.*

38. Furthermore, Grynberg alleges that *British Gas's breach of fiduciary duty* was committed knowingly, intentionally, willfully, wantonly, maliciously, and with a conscious disregard for the rights and welfare of Grynberg. Grynberg is therefore entitled to punitive damages against British Gas and Gregory.

(emphasis added). The allegations for breach of the duty of good faith and fair dealing and breach of confidence allege breaches of different duties, but they essentially track this language. Nowhere is it alleged that Gregory owed any of these duties to Grynberg. In addition, there is no allegation that Gregory breached any of these duties. In each case, it is British Gas who is alleged to have breached a duty it owed to Grynberg. The only reference to Gregory is that his actions precipitated a breach and that Grynberg is entitled to punitive damages. Precipitating a breach of a duty one is not alleged to owe cannot possibly result in liability. Furthermore, there is no allegation that Gregory acted intentionally in precipitating such a breach. The mere

mention of a defendant's name in the context of an allegation cannot, by itself, allege a claim against him or her. These tort claims will therefore be ignored for purposes of determining the propriety of removal.

### 2. Grynberg's Original Petition fails to allege a conversion claim against Gregory

As to the conversion claim, the court also finds that no claim is alleged against Gregory. The removing defendants put much stock in the rule that real property cannot be the subject of a conversion action. *Rodriguez v. Dipp,* 546 S.W.2d 655, 658 (Tex. Civ.App.—El Paso 1977, writ ref'd n.r.e.). It would appear that Texas law, at least, recognizes conversion of intangible contract rights even when the subject of the contract relates to real property. *See, e.g., Prewitt v. Branham,* 643 S.W.2d 122, 123 (Tex.1983) (conversion of lessee's rights in lease document); *Watts v. Miles,* 597 S.W.2d 386, 387–88 (Tex. Civ.App.—San Antonio 1980, no writ) (conversion of stock certificates that were never issued). However, there appears to be no allegation that Gregory personally committed conversion. The petition asserts a claim for conversion "Against British Gas and Gregory" but then states as follows:

48. As shown by the facts alleged above, *British Gas,* through the acts of Gregory and others, *converted interests rightfully belonging to Grynberg.* Some of those interests have been transferred to AGIP.

49. As a result of *British Gas's conversion of contractual and property interests belonging to Grynberg,* Grynberg has suffered actual damages and is entitled to recovery of such damages.

50. Furthermore, Grynberg alleges that British Gas and Gregory's acts of conversion were committed knowingly, intentionally, willfully, wantonly, maliciously, and with conscious disregard for the rights and welfare of Grynberg. Therefore, Grynberg is entitled to punitive damages.

(emphasis added). Aside from the reference to "Gregory's acts of conversion," there is simply no allegation that Gregory personally

converted anything, and there is no allegation that Gregory's acts of conversion caused any damage to Grynberg. In each case, it is British Gas who did the converting. The court finds the pleadings simply insufficient to allege a cause of action against Gregory.

### 3. Grynberg's Original Petition does allege fraud against Gregory

The court may be overly technical in its scrutiny of the breach of tort duty claims and the conversion claim. In any event, Grynberg's fraud allegation against Gregory is a different matter. The petition specifically charges Gregory with commission of fraud. It alleges that Grynberg relied on the misrepresentations of Gregory and that Gregory knew and intended such reliance, and Grynberg suffered a detriment thereby. The removing defendants argue that the fraud allegation against Gregory fails to satisfy Fed. R.Civ.P. 9(b) in that it is not plead with sufficient particularity.

#### a. The alleged failure to satisfy Fed.R.Civ.P. 9(b) will not prevent consideration of the fraud claim

Fed.R.Civ.P. 9(b) requires a plaintiff to plead fraud allegations with particularity. The failure to satisfy Rule 9(b) does not mean that the court should ignore altogether a claim of fraud. The removing defendants cite to no case (nor has the court found one) in which the particularity requirements of Rule 9(b) were used to invalidate a fraud claim which would otherwise prevent removal. It seems odd to encumber a plaintiff who originally filed in state court with the burden of satisfying a technical *federal* pleading rule in order to obtain a remand. This is especially true since the propriety of remand is determined only at the time that the petition for removal is filed, *Brown v. Southwestern Bell Tel. Co.,* 901 F.2d 1250, 1254 (5th Cir. 1990), permitting no amendment to satisfy Rule 9(b). Moreover, the appropriate remedy for Rule 9(b) violations is rarely dismissal. *Massey–Ferguson, Inc. v. Bent Equipment Co.,* 283 F.2d 12, 15 (5th Cir.1960). This

leaves much room to doubt the proposition that the court should ignore fraud allegations that do not satisfy Rule 9(b).

### b. Grynberg's Original Petition satisfies Fed.R.Civ.P. 9(b)

█ In any event, the court believes that the allegations in Grynberg's petition satisfy Rule 9(b). Grynberg alleges that it was Gregory who represented to Grynberg British Gas's desire to participate in the consortium. Grynberg alleges that it was Gregory who specifically represented that the phrase "reasonable period of time" in the AMI agreement meant anytime before a major hydrocarbon award. Grynberg alleges that it was Gregory who participated in the secret meetings in Kazahkstan in October, 1990. Allegedly, Gregory knew the contents of the secret protocol and nevertheless reassured Grynberg that everything was all right. Grynberg's petition contains a detailed history of the alleged fraud. In sum, Grynberg's allegation of fraud satisfies Rule 9(b).

### 4. *Texas law permits recovery against Gregory individually for fraud*

### a. In Texas, agents are individually liable for the torts they commit

█ Assuming Texas law governs the fraud claim, then it is clear that there is a "possibility of recovery" against Gregory. The general rule in Texas is that an individual is liable for the torts he or she commits, even if he or she is acting as an agent. *Leyendecker,* 683 S.W.2d at 375. An agent who acts with fraudulent intent can be individually liable for fraud. *Cameron v. Terrell & Garrett, Inc.,* 599 S.W.2d 680, 682 (Tex. Civ.App.—Fort Worth 1980), *rev'd on other grounds,* 618 S.W.2d 535 (Tex.1981); *Dr. Salsbury's Labs. v. Bell,* 386 S.W.2d 341, 343 (Tex.Civ.App.—Dallas 1964, writ dism'd).

### b. Grynberg's claim is not merely an estoppel claim

█ The removing defendants also assert in a footnote that Grynberg's claims

against Gregory amount only to an affirmative claim of estoppel. In Texas, estoppel is not an independent cause of action. *Crowder v. Tri–C Resources, Inc.,* 821 S.W.2d 393, 397 (Tex.App.—Houston [1st Dist.] 1991, no writ). It is true that Grynberg alleges that much of what Gregory and British Gas did could, if true, estop British Gas from relying on the "reasonable time" clause of the AMI agreement. But pleading estoppel does not thereby preclude Grynberg from also pleading fraud. Grynberg also pleads fraud.

The removing defendants seemingly base their argument on the theory that the only actionable fraud in Texas is fraudulent inducement to contract. But Texas law does not restrict recovery for fraud only to those plaintiffs who are fraudulently induced to contract; Texas only requires reliance by the plaintiff that causes injury. *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 723 (Tex.1990); *see also, Bradford v. Thompson,* 460 S.W.2d 932, 936 (Tex.Civ.App.—Tyler 1970) (reliance in a fraud case can manifest itself as entering into a contract or otherwise acting to one's hurt), *rev'd on other grounds,* 470 S.W.2d 633 (Tex.1971), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1174, 31 L.Ed.2d 232 (1972).

### 5. *Even if Kazakhi law absolutely precludes recovery against Gregory, the chance that Texas law could apply makes joinder nonfraudulent*

### a. Under Texas choice of law principles, Kazakhstan law is likely to govern this transaction

█ As will be shown below, the removing defendants contend that the law of Republic of Kazakhstan precludes recovery against employee tortfeasors acting within the course and scope of their employment. And, quite probably, this court would apply Kazakhi law to many of the events in this case. A federal court sitting in diversity applies the choice of law rules of the forum state. *Klaxon v. Stentor Electric Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Except in contract cases involving a choice of law clause, Texas applies the "most significant relationship" test to all civil cases to determine which law applies. *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.

1984) (contract); *Gutierrez v. Collins,* 583 S.W.2d 312 (Tex.1979) (tort). "[T]he number of contacts with a particular state [or country] is not determinative. Some contacts are more important than others because they implicate state policies underlying the particular substantive issue. Consequently, selection of the applicable law depends on the qualitative nature of the particular contacts." *Duncan,* 665 S.W.2d at 421. At first blush, it seems likely that Kazakhi law would govern most or all of the claims asserted by Grynberg against Gregory. Many of the allegedly tortious acts took place in Kazakhstan, and the situs of the mineral property is in Kazakhstan.

**b. The possibility that Texas law applies to the issue of employee tortfeasor liability makes joinder nonfraudulent**

*i. Which law governs is an ambiguous question of law*

The court assumes for the moment that employee tortfeasors are not liable under Kazakhi law. If Kazakhi law applied, joinder of Gregory would then be fraudulent because the removing defendants would have established that Grynberg has no possibility of recovery against Gregory. The removing defendants cite to the case of *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1562 (11th Cir.1989), in which the Eleventh Circuit held that claims of fraudulent joinder should be analyzed under the law selected under the applicable choice of law rules.

Such a resolution, however, ignores the fact that the choice between Texas and Kazakhi law is in itself a question of law. *Duncan,* 665 S.W.2d at 421 ("the question of which state's law will apply is one of law"). All ambiguities in the controlling state law are resolved in favor of Grynberg. *Carriere,* 893 F.2d at 100. Under *Klaxon,* Texas choice of law rules are therefore the controlling state law. And as *Duncan* holds, sheer number of contacts is not dispositive; the quality of those contacts must be analyzed in light of how much they implicate the particular state's interest. 665 S.W.2d at 421; *accord Mitchell v. Lone Star Ammunition,*

*Inc.,* 913 F.2d 242, 249 (5th Cir.1990). *Duncan* requires that the court undertake a separate choice of law inquiry as to each issue in dispute, focusing on the interests *as they relate to that particular issue.* 665 S.W.2d at 421. Thus, separate issues in the same cause of action may warrant separate treatment. Given the imprecise nature of many of these determinations, choosing which law governs can be a vague and ambiguous process.

*ii. The significance of the Texas contacts to the issue of employee tortfeasor liability could realistically outweigh the significance of the Kazakhstan contacts*

Here, the precise issue is whether employee tortfeasors acting in the course of their employment in an organization are liable. The removing defendants argue, and the court assumes for the moment, that Kazakhi law does not permit tort recovery against employees acting in the course of their employment but instead only allows recovery against the organization. Therefore, to prevail, the removing defendants will have to establish that there is no possibility under the most significant relationship test that Texas law would apply to the specific issue of employee tortfeasor liability, even if it were perfectly clear that Kazakhi law would govern most or all other aspects of the transaction.

The identifiable Kazakhi governmental interest in only allowing recovery against the organization seems to be geared toward protecting individuals from ruinous liability stemming from the performance of their duties. The rule of no liability for employees may reflect a Kazakhi desire that all damage inflicted by employees should be borne by the organization that employs them. From what the court can discover about the Kazakhi scheme of compensation, the organization can then seek indemnity from the employee but only in limited amounts per month or in other special situations. *Encyclopedia of Soviet Law* 482 (F.J.M. Feldbrugge et al. eds., 1985). (A Soviet legal expert of British Gas contends that Kazakhstan inherited much of the Soviet Civil Code). This again indicates a Kazakhi interest in avoiding ruinous liability.

Obviously, this Kazakhi rule of law (if indeed this is the rule) tries to protect the welfare of Kazakhi employees and encourages Kazakhi employers to strictly monitor employee activities. Gregory is a Texas resident, and his employer is a British corporation. The Kazakhi interest in protecting Gregory from ruin is very slight or nonexistent. The Kazakhi interest in policing the activities of British Gas is stronger, but that interest is furthered by the Kazakhstan rule that makes organizations liable. That Kazakhi interest is not furthered significantly by simultaneously exempting from liability the employees of foreign corporations.

In contrast, Texas has a strong interest in ensuring that its residents do not perpetuate fraud on its own residents or anyone else. To further that interest, Texas has chosen not to insulate its residents from liability. To do otherwise would enable Texas residents to hide behind the corporate veil and discourage responsible individual behavior. Although Grynberg is a Colorado citizen, Texas has at least some interest in ensuring those wronged by fraud should not be deprived of a defendant simply because the tortfeasor happens to work for someone else. Therefore, as to what law governs the issue of whether employee tortfeasors are liable, it is certainly possible that Texas law would apply.

This court emphasizes that it has not decided that Texas law governs the issue of liability of employee tortfeasors. Instead, it has merely acknowledged that there are plausible arguments in favor of the application of Texas law. Consequently, the ambiguous choice of law question resolves in Grynberg's favor. Because the removing defendants have not demonstrated that there is no possibility of recovery under Texas law (indeed the opposite is true), joinder of Gregory on the fraud claim is not improper.

6. *Even if Kazakhi law necessarily applies, British Gas and Gregory have failed to establish that there is no possibility of recovery*

Even if the removing defendants are correct in asserting that Kazakhi law necessarily governs the issue of employee liability, they have not demonstrated that Grynberg has fraudulently joined Gregory. British Gas and Gregory bear the burden of showing no possibility of recovery under Kazakhi law. The only basis for fraudulent joinder they assert is their claim that Kazakhi law does not permit recovery against employee tortfeasors acting in the course and scope of employment.

This court has considered two sources of the Kazakhi law of employee tortfeasors. The first source of Kazakhi law is contained in the "Supplemental Affidavit in Support of Defendants' Opposition to Plaintiff's Motion to Remand." This is an affidavit of Yuri Grigoryevich Basin, who purports to be an expert in Kazakhi and Soviet law. Basin renders an opinion as to whether "the courts of Kazakhstan recognize a cause of action against an individual who commits tortious (including fraudulent) acts in the course of performance of his employment." Basin analyzes Article 443 of the Kazakhstan Civil Code. Basin concludes that there is only a cause of action against the employer and not against the employee. To determine foreign law, the court may consider testimony that is otherwise inadmissible under the Federal Rules of Evidence. Fed.R.Civ.P. 44.1. The second source of Kazakhi law is the court's own research.

The affidavit of Basin and the court's own research do not erase the possibility of recovery against Gregory under Kazakhstan law. The court makes the following observations about Basin's affidavit and its own research of Kazakhstan law:

1. Basin's statement that there is no possibility of recovery against an employee who commits tortious acts in the course of employment is wholly conclusory.

2. Basin's sole support for the proposition that the cause of action for tortious acts rests solely against the employer is based on a Soviet Supreme Court case of negligence, not fraud, and there is no indication that a Kazakhstan court would *necessarily not* make an exception for fraud. Moreover, according to another affidavit of Basin attached as Exhibit 1 to the "Motion of Defendant British Gas to Dismiss or, in the Alternative, for Summary

Judgment," Article 53 of the Kazakhi Civil Code:

allows a party to submit a claim seeking annulment of the transaction to which such party agreed based on a false representation. In the event of such annulment, *the party guilty of fraud* shall return to the affected party all assets obtained through fraud or, if such return is not possible, to compensate the affected party for the value of the assets obtained through fraud.

(emphasis added). Nowhere is it demonstrated that the specific fraud rule which appears to create individual liability is superseded by the more general tort rule that exempts employees from liability.

3. That same Soviet Supreme Court case that holds that individuals are not liable for tortious acts in the course of employment was decided under *Soviet law, not Kazakhi law.* Although Basin claims that Article 443 is identical to the Soviet provision, there is no assertion that Soviet Supreme Court decisions are binding on Kazakhi courts. The Republic of Kazakh wields independent sovereign authority and could interpret Article 443 differently than the Soviets interpreted an identical provision. One would have to overlook the American judicial experience to conclude that there is "no possibility" that courts of different sovereigns might interpret identically worded statutory provisions differently. American law is replete with examples of where identically worded state and federal constitutional and statutory provisions are construed differently. The possibility that there could be a different interpretation is buttressed by the fact that a lower Soviet court held that the Soviet provision *did* permit recovery against the employees under the Soviet provision.

4. The text of the Soviet code provisions themselves strengthen the possibility that a Kazakhi court could interpret the Kazakhi version differently. Article 444 of the Russian Soviet Federated Socialist Republic Civil Code in part read, "Harm caused to the person or property of an individual citizen and harm caused to an organization shall be subject to indemnification by the person causing the harm in full, with the exception of cases provided for by USSR legislation."

GK RSFSR art. 444, *reprinted and translated in Legislative Acts of the USSR*, (Progress Publishers 1988). Article 445 stated "An organization shall indemnify harm inflicted through the fault of its workers in the performance of their official duties." *Id.* art. 445. Article 444 would impose liability on Gregory. Article 445 only purports to make British Gas vicariously liable for Gregory's actions. Apparently, in interpreting these provisions, the Soviet Supreme Court may have found that Article 445 impliedly excluded the liability created by Article 444. That may well be a plausible interpretation, but it is not the only one. Indeed, a plain reading of Article 445 suggests that, as a vehicle of vicarious liability, it is merely additive to the liability of Article 444. There is no telling what the canons of statutory construction were in the former Soviet Union. There is also no telling what they are in the Republic of Kazakhstan. Room enough exists to conclude that a Kazakhi court could construe these provisions differently.

Therefore, the court finds that there is at least some possibility of recovery against Gregory on the fraud claim. The joinder of a resident defendant prevents removal of an action if removal is on the basis of diversity. 28 U.S.C. 1441(b). The court therefore finds it unnecessary to decide whether Trans-World, a corporation with the same citizenship (as well the same mailing address, ownership, and officers) as the plaintiff is fraudulently joined or improperly aligned as a defendant in the declaratory judgment action.

### III. REMOVAL ON THE BASIS OF FEDERAL QUESTION

The removing defendants also claim that removal is proper on the basis of federal question. Section 1331 of Title 28 grants the district court original jurisdiction over claims "arising under the Constitution, laws, or treaties of the United States." Section 1441(b) permits removal on the basis of federal question jurisdiction without regard to the citizenship of the parties. The nutshell of the removing defendants' argument is that Grynberg's specific performance, injunction, and conversion claims present issues affecting international relations. Issues of international relations are incorporated into fed-

eral common law, which presents a federal question under § 1331.

### A. Federal Jurisdiction Exists if Grynberg's Well–Pleaded State Law Claims Contain a Substantial Federal Issue

1. *Federal question jurisdiction extends to state law claims with a substantial federal issue*

All attempts have failed to frame "a single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts.... [T]he phrase 'arising under' masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." *Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 8, 103 S.Ct. 2841, 2845–46, 77 L.Ed.2d 420 (1983). The most common definition of "arising under" is Justice Holmes' statement that "[a] suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). British Gas and Gregory do not contend that any of Grynberg's claims are creatures of federal law.

Holmes' statement, however, does not delimit the totality of federal questions. Instead, it is a principle of inclusion rather than exclusion. *Franchise Tax Bd.*, 463 U.S. at 9, 103 S.Ct. at 2846. In *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), the Supreme Court held that a claim arises under federal law when the vindication of a state law right necessarily turns on the resolution of a substantial issue of federal law. *Accord Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808–09, 106 S.Ct. 3229, 3232–33, 92 L.Ed.2d 650 (1986); *Franchise Tax Bd.*, 463 U.S. at 9, 103 S.Ct. at 2846. British Gas and Gregory contend that one or more of Grynberg's state law claims turn on an issue of federal law, presenting a "*Smith*-type" case.

2. *Federal issues in a state law cause of action must be essential elements of the "well-pleaded complaint"*

▮▮▮ The mere presence of a federal issue in this lawsuit is, by itself, insufficient to confer jurisdiction. Whether a case presents a federal question is determined by the "well-pleaded complaint" rule. *Caterpillar, Inc., v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Federal jurisdiction only exists for a *Smith*-type case when a federal issue exists on the face of the plaintiff's complaint, "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914). This rule applies even if the only thing in issue in a particular case is existence or applicability of the federal defense. *Franchise Tax Bd.*, 463 U.S. at 12, 103 S.Ct. at 2848–49. "[A] suit does not arise under an act of Congress or the Constitution of the United States because prohibited thereby.... With no greater reason can it be said to arise thereunder because permitted thereby." *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 116, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936). Therefore, a court must determine jurisdiction "from only those allegations necessary to state a claim ..." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1165 (5th Cir.1988), *aff'd on other grounds,* —— U.S. ——, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992). Thus, when a *Smith*-type federal question case is analyzed in conjunction with the well-pleaded complaint rule, "original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims...." *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. at 2848.

3. *The Original Petition's assertion that no federal issues are presented is not controlling*

▮▮▮ Grynberg's Original Petition states "no claims are asserted under federal law." Normally, "the [well-pleaded complaint] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar,* 482 U.S. at 392, 107 S.Ct. at 2429. At the same time, "the removal court should inspect the complaint carefully to determine whether

a federal claim is necessarily presented, even if the plaintiff has couched his pleading exclusively in terms of state law. The reviewing court looks to the substance of the complaint, not the labels used in it." *In re Carter,* 618 F.2d 1093, 1101 (5th Cir.1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981) (citation omitted). "[T]he plaintiff's failure to make specific reference in the complaint to a source of federal law that clearly is applicable will not prevent removal." 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3722, at 276 (1985). This appears to be the same "artful pleading doctrine" recognized by *Eitmann v. New Orleans Public Service, Inc.,* 730 F.2d 359 (5th Cir.) ("artful pleading" cannot circumvent federal question jurisdiction), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984). The Supreme Court has characterized this principle as "settled." *See Federated Dep't Stores v. Moitie,* 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981). Thus, if any of Grynberg's well-pleaded claims raise an issue that is necessarily one of federal law, then Grynberg's assertion that it brings no federal claims will not be controlling.

## B. *The Notice of Removal was Adequate*

### 1. *The notice of removal adequately stated grounds for removal*

■ Before this court can reach the merits of the removing defendants' claim of federal question jurisdiction, this court must first decide whether the notice of removal adequately stated the grounds for removal. Section 1446(a) requires that the notice of removal contain "a short and plain statement of the grounds for removal." In their notice of removal, the removing defendants claim:

> One or more claims in plaintiff Grynberg's Original Petition arise under the laws or treaties of the United States, which include principles of international law which form part of the federal common law.

Grynberg objects that this notice fails to constitute a "short and plain statement of the grounds for removal" as required by § 1446(a) because it fails to allege specific facts showing removal jurisdiction.

■ The requirement that the notice of removal must contain a "short and plain statement of the grounds for removal" does not mean that the notice must allege specific facts showing removability. The "short and plain statement" requirement of § 1446(a) is treated the same way as the Fed.R.Civ.P. 8(a) requirement that a complaint invoking the original jurisdiction of the district court must contain a "short and plain statement of the grounds upon which the court's jurisdiction depends, ..." *Rachel v. State of Georgia,* 342 F.2d 336, 340 (5th Cir.1965), *aff'd,* 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); *Wilkinson v. United States,* 724 F.Supp. 1200, 1205 (W.D.N.C.1989), *aff'd,* 972 F.2d 345 (4th Cir.1992), *cert. denied* — U.S. ——, 113 S.Ct. 1259, 122 L.Ed.2d 656 (1993); 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3733, at 536 (1985). "The absence of detailed grounds setting forth basis for removal is not fatal to the defendants' right to remove." *Allman v. Hanley,* 302 F.2d 559, 562 (5th Cir.1962). Furthermore, in a complaint invoking original federal question jurisdiction, the failure to name a particular statute upon which jurisdiction rests is not fatal, if the facts alleged in the complaint show that a federal question exists. *Southpark Square Ltd. v. City of Jackson, Miss.,* 565 F.2d 338, 341 n. 2 (5th Cir.1977), *cert. denied,* 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978); 5 Wright & Miller, *supra* § 1209, at 112–13 (1990).

The court finds that the removal petition satisfies § 1446(a). The removal petition alleges that one or more claims of the plaintiff arises under international law, which is part of the federal common law. This allegation adequately informs the plaintiff that removal is predicated on a specific area of the federal common law. If the removing defendants were required to specifically plead the statute upon which jurisdiction rests, they have done so by stating that jurisdiction and removal rest on § 1331 and § 1441.

### 2. *British Gas and Gregory have not asserted "new grounds" for removal*

Grynberg also complains that the removing defendants have, after the time for removal

has expired, asserted "new grounds" in their opposition to Grynberg's Motion to Remand. In no way did the removing defendants assert "new grounds" for removal in their briefs; they merely elaborated on and argued the merits of their federal question grounds for removal. *Cf. O'Halloran v. University of Wash.*, 856 F.2d 1375, 1381 (9th Cir.1988) (impermissible "new grounds" were alleged when party originally sought removal on facts alleged in third-party complaint, and then, after the time for removal expired, sought to justify removal on allegations contained in the original complaint).

## C. Federal Question Jurisdiction Exists if a Question of International Relations Appears in Well–Pleaded State Law Claims

### 1. State law claims raising issues of international relations implicate federal common law for federal question jurisdiction purposes

 The court now turns to the merits of the removing defendant's assertion that federal jurisdiction exists by virtue of the presence of an issue of international relations in at least one of Grynberg's claims. The removing defendants do not now claim that any federal statute or treaty is involved in this case. Instead, they argue that the federal common law of international relations is implicated. Of course, there is no *general* federal common law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Nevertheless, in some areas federal courts have authority to fashion a federal common law either because of uniquely federal interests at stake or because of Congressional authorization. *Texas Indus., Inc. v. Radcliff Materials*, 451 U.S. 630, 640, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981). In *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 425, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964), the Supreme Court held that, due to the significance of international relations, "our relationships with other members of the international community must be treated exclusively as an aspect of federal law." Although *Sabbatino* dealt only with the "act of state doctrine," it is now apparent that claims raising questions of for-

eign relations are incorporated into federal common law. *See generally, Radcliff*, 451 U.S. 630, 101 S.Ct. 2061; *Sabbatino*, 376 U.S. 398, 84 S.Ct. 923; *Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir.1986), *cert. dism'd*, 480 U.S. 942, 107 S.Ct. 1597, 94 L.Ed.2d 784 (1987). For purposes of determining whether a case is one "arising under the ... laws ... of the United States," the word "laws" in 28 U.S.C. § 1331 includes the federal common law. *Illinois v. City of Milwaukee, Wisc.*, 406 U.S. 91, 99–100, 92 S.Ct. 1385, 1390–01, 31 L.Ed.2d 712 (1972); *see also Republic of Philippines*, 806 F.2d at 353; *Restatement (Third) of Foreign Relations Law of the United States* § 112 (1987) ("The determination and interpretation of international law present federal questions").

As stated previously, the removing defendants do not argue that international law or a United States statute or treaty creates any of the causes of action that Grynberg asserts. Grynberg apparently exhibits some confusion over this point because it goes to great lengths in one of its reply briefs to demonstrate that the law of the Republic of Kazakhstan is not international law. Nowhere did the removing defendants ever contend that the law of Kazakhstan was "international law." Instead, they argued that Kazakhi law governed the transaction in an attempt to show that Gregory's joinder was fraudulent for diversity purposes.

### 2. Questions of international relations are almost always "substantial" in Smith-type cases

 Not every case in which a federal issue is present in a state created cause of action present a federal question; the federal issue in a *Smith*-type case must be "substantial." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 813, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650 (1986). Substantiality of the federal issue is determined with regard to the nature of the federal interest at stake. *Id.*, 478 U.S. at 813 n. 12, 106 S.Ct. at 3235 n. 12. In *Smith*, the plaintiff alleged the unconstitutionality of a federal statute as an element of his otherwise state law cause of action, thereby implicating the important federal interest in the constitutionality of fed-

eral statutes. 255 U.S. at 201, 41 S.Ct. at 245. *Merrell Dow,* on the other hand, involved a state law tort claim where violation of a federal standard was an element of the prima facie case. 478 U.S. 804, 805–06, 106 S.Ct. 3229, 3231. The federal safety standard was insufficiently substantial to confer jurisdiction, especially in light of the fact that Congress intended that no private federal cause of action should exist for violation of the safety standard. *Id.,* 478 U.S. at 812–816, 106 S.Ct. at 3234–36.

The Fifth Circuit confronted a *Smith*-type case in *Willy v. Coastal Corp.,* 855 F.2d 1160 (5th Cir.1988), *aff'd,* —— U.S. ——, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992). In *Willy,* the plaintiff alleged a state wrongful termination claim because he was terminated due to his attempts to have his employer comply with federal environmental and securities laws. *Id.* at 1169. The Fifth Circuit held that the federal interest in the case was not "substantial" enough to confer jurisdiction, in part because the issue of whether the defendant had violated federal law was more collateral and not at the forefront. *Id.* at 1171. In addition, the court found that there were alternate theories of wrongful discharge in the case, not all of which involved violations of federal law. *Id.* at 1170.

██ Unlike the issues in *Merrell Dow* and *Willy,* and like the issue in *Smith,* issues of international relations implicate important federal interests. Assuming that they appear as an issue in the well-pleaded complaint, such questions would seem to nearly always involve federal issues of such a "substantial" nature as to warrant the exercise of jurisdiction. International relations are not such that both the states and the federal government can be said to have an interest; the states have little interest because the "problems involved [in international relations] are uniquely federal." *Sabbatino,* 376 U.S. at 424, 84 S.Ct. at 938. Involved are federal interests no less serious than the peace of nations and the constitutional relationship between the coordinate branches of government. *See Sabbatino,* 376 U.S. at 417–18, 423–25, 84 S.Ct. at 934–35, 938–39.

A look at congressional intent bolsters the conclusion that questions of international re-

lations are almost always substantial. The Court in *Merrell Dow Pharmaceuticals* found that a federal tort standard was not "substantial" mainly because Congress did not intend that there should be a private federal remedy for violation of it. 478 U.S. at 812, 106 S.Ct. at 3234. "[I]t would similarly flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction" over a claim Congress intended not to be federal. *Id.*

In stark contrast is the evidence of congressional intent as it relates to international issues involving foreign sovereigns. Congress grants subject matter jurisdiction over *any* case against a foreign sovereign when foreign sovereign immunity does not apply. 28 U.S.C. § 1330. *Any* case against a foreign sovereign may be removed. 28 U.S.C. § 1441(d). This grant of federal jurisdiction, based on the "arising under" language of Article III, is much broader than the statutory grant found in 28 U.S.C. § 1331. *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). These statutes reflect a strong congressional intent that any questions involving foreign sovereigns be litigated in federal court and federal court alone. *Id.,* 461 U.S. at 489, 103 S.Ct. at 1969. "Actions against foreign sovereigns in our courts raise sensitive issues concerning the foreign relations of the United States, and the primacy of federal concerns is evident." *Id.,* 461 U.S. at 493, 103 S.Ct. at 1971.

Although the Republic of Kazakhstan is not a party to this lawsuit, its interests in allocating it own mineral resources are vitally affected by the outcome. In fact, British Gas argues that Kazakhstan is an "indispensable party" under Fed.R.Civ.P. 19(a). The willingness of Congress to go to great lengths to ensure that claims against foreign sovereigns are litigated in federal court unmistakably shows that questions of international relations in a "well-pleaded complaint" would be "substantial."

Further evidence of substantiality is the fact that the Government of the Republic of Kazakhstan has taken the time and effort to write this court with respect to this case.

Kazakhstan demands that any resolution of Grynberg's rights to mineral interests in the Karachaganak Field take place in Kazakhstan. In Kazakhstan's view, "[i]t would be contrary to the principle of comity among civilized nations for a foreign court to interfere with this process [of granting rights to foreign investors by the government] by determining whether parties other than those chosen by the Republic should be allowed to participate in the development of the Republic's natural resources or enjoy the benefits thereof." The strident of opposition of the Kazakhi government to any determination of *Kazakhi mineral rights* by a *foreign court* illustrates both the federal international interest in diplomacy and the domestic federal interest in the relationship between the judiciary and the executive. If Grynberg's well-pleaded complaint raises issues of international relations, the federal interests involved would certainly be "substantial." *Republic of Philippines,* 806 F.2d at 353.

**D. *Essential Elements of Some of Grynberg's State Law Claims, if Well-Pleaded, Turn on the Resolution of Federal Common Law Governing Foreign Relations***

The only remaining question is whether any of Grynberg's well-pleaded claims turn on the resolution of federal common law governing foreign relations. The removing defendants contend that federal foreign relations law is necessarily involved in one or more of Grynberg's claims. The court will discuss each possible issue of federal common law on international relations as it pertains to each claim.

1. *The well-pleaded complaint rule forecloses federal jurisdiction over the breach of contract claim and the breach of tort duty claims*

■ Straightforward application of the well-pleaded complaint rule answers the question of whether federal question jurisdiction exists for Grynberg's claims of breach of contract, breach of fiduciary duty, breach of the duty of confidence, and breach of the duty of good faith and fair dealing. As to each of these claims, Grynberg is claiming that British Gas breached a particular duty it owed to Grynberg and Grynberg is thereby

entitled to damages. In each claim, the prima facie case consists of a duty, breach, and harm caused thereby. As an issue of federal law involving international relations, the removing defendants point to the federal "act of state doctrine." This doctrine, where it applies, requires a court in the United States to accept as valid the official acts of foreign sovereigns. *W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l,* 493 U.S. 400, 404–07, 110 S.Ct. 701, 704–05, 107 L.Ed.2d 816 (1990); *Sabbatino,* 376 U.S. at 416–18, 84 S.Ct. at 934–35.

Act of state issues "... arise when a court *must* decide—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign." *W.S. Kirkpatrick & Co., Inc.,* 493 U.S. at 406, 110 S.Ct. at 705. However, as discussed earlier, "... a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case "arises under" federal law. [A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Franchise Tax Bd.,* 463 U.S. at 10–11, 103 S.Ct. at 2847.

The act of state doctrine arises, if at all, only by way of a defense to these claims. As to each claim, the act of state doctrine could only be used to establish the validity of the Kazakhi award of the mineral rights in the Karachaganak Field to British Gas/AGIP. For example, the doctrine might establish that the British Gas/AGIP ownership of the mineral rights is not wrongful because it derives from a valid act of state. Or it might demonstrate that the Kazakhi failure to award Grynberg any mineral rights cannot be used to establish a tort claim against British Gas even if British Gas was instrumental in causing the actions of the Kazakhi government. This court is not implying that these points are or are not valid applications of the act of state doctrine. It merely mentions them to demonstrate that the doctrine would only be applicable as a defense. "A defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharmaceuticals,* 478 U.S. at 808, 106 S.Ct. at 3232. Grynberg's prima facie case as to each of these claims would not require it to establish the invalidity of any act of the Republic of Kazakhstan.

As to these claims, this case is comparable to *Aquafaith Shipping, Ltd. v. Jarillas,* 963 F.2d 806 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 413, 121 L.Ed.2d 337 (1992). In that case, the plaintiff, a Filipino, filed nonremovable maritime claims against the defendants for the death of her husband in state court. *Id.* at 807. She also filed an additional claim that the defendants had unlawfully overreached by causing her to settle the claim in the Philippines. *Id.* The defendants sought removal on the basis that the settlement in the Philippines was filed with a Filipino administrative body charged with helping families settle claims. *Id.* at 808. The defendants argued that to find that they had tortiously overreached, the court would have "to pass on the validity of official acts of a foreign sovereign taken within its own territory," thereby creating a federal question due to presence of a question on international relations. *Id.* The Fifth Circuit rejected this argument because any reference to the official acts of the Filipino agency only appeared in the defendants' pleadings and did not appear on the face of the "well-pleaded complaint." *Id.* at 808–09. Although the court did not explicitly say so, it seems clear that any act of state issue would merely have arisen by way of defense.

*Aquafaith Shipping, Ltd.* corresponds with Grynberg's claims for breach of contract and breach of tort duty. Foreign acts of state might be used to demonstrate that no breach of contract occurred or to justify otherwise tortious conduct. To paraphrase *Aquafaith Shipping, Ltd.,* "[t]hese allegations do not lift this case from the usual [ ] context of [Kazakhi oil fields] into the rarefied realm of foreign relations." *See id.* at 809. "The most one can say is that a question of federal law is lurking in the background." *Gully,* 299 U.S. at 117, 57 S.Ct. at 99–100.

2. *Grynberg's well-pleaded claims for specific performance and other injunctive relief present issues of federal common law governing international relations*

a. **Grynberg seeks equitable relief to obtain the rights in the Karachaganak Field**

■ Grynberg's claim for an injunction compelling specific performance and the claim for other injunctive relief present more difficult applications of the well-pleaded complaint rule. For the specific performance claim, Grynberg is asking this court to order British Gas to transfer some or all of its interests in the Karachaganak Field to Grynberg. The petition states:

> Grynberg is entitled to specific performance of the British Gas agreement and to receive a partially-financed 20 percent or greater working interest in all concession rights in the Karachaganak Field under the terms of the British Gas agreement or under terms that confer approximately the same benefit to Grynberg . . .

Grynberg seeks more than mere specific performance of the AMI agreement. In the prayer, Grynberg asks for:

> an injunction ordering specific performance of the Agreement between British Gas and Grynberg so as to transfer to Grynberg, in whole or in part its interests in the Karachaganak Field on the same basis as the Agreement, or *in the alternative an injunction ordering British Gas to transfer all interests in the Karachaganak Field after recovery of its capital costs* . . .

(emphasis added). The removing defendants argue that in order to be entitled to such relief, Grynberg must prevail on its interpretation of federal common law governing international relations. They contend that Grynberg must establish the validity of its claim of right to title to property interests located *in* a foreign sovereign nation and allocated by that foreign sovereign to someone other than Grynberg.

After careful consideration, this court concludes that a "well-pleaded complaint" for an injunction compelling specific performance or other injunctive relief necessarily must allege issues of federal international relations law. The court bases its conclusion on two reasons. First, a well-pleaded complaint for specific performance would require the nullification of and interference with the relationship between Kazakhstan and its resources. Claims of right to title in foreign lands present questions of international relations gov-

erned exclusively by federal law. Second, to obtain injunctive relief under Texas substantive law, a plaintiff must plead and prove the *absence* of any facts or reasons reasonably inferable from the petition that might preclude the granting of an injunction. Consequently, Grynberg's well-pleaded complaint must negative the existence of certain facts which depend on federal common law issues of international relations.

**b. The basic remedy of specific performance requires allegations that depend upon the application of federal common law governing international relations**

The court believes that the remedy of specific performance requires allegations that turn on the application of federal common law governing foreign relations. Under Texas choice of law principles, matters of remedy are determined by the law of the forum state, Texas. *Vartanian Family Trust No. 1 v. Galstian Family Trust,* 724 S.W.2d 126, 128 (Tex.App.—Dallas 1987, no writ). "In an action for specific performance, the plaintiff has the burden of showing his right to the remedy. He must prove a valid contract that the law will enforce." 67 *Tex. Jur.3d Specific Performance* § 86 (1989). It is obvious that at some point in the litigation, Grynberg will have to prevail on some construction of federal international relations law in order to obtain specific performance. However, simply because the plaintiff must prevail on a federal issue to succeed does not mean that allegation of that issue is necessary to the well-pleaded complaint. *See Oklahoma ex rel. Oklahoma Tax Comm'n v. Graham,* 846 F.2d 1258, 1261–62 (10th Cir. 1988) (Tacha, J., dissenting), *rev'd,* 489 U.S. 838, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989). Whatever issue of federal common law governing international relations that may exist in the case, it must be necessary to affirmatively plead facts concerning that issue in order to state a claim.

It is appropriate, therefore, to determine exactly what issues of international relations law would arise in the process of litigating a claim for specific performance of a contract for foreign mineral property. It is a question of international relations law

whether a foreign sovereign has the sole power to control its natural resources. *International Assoc. of Machinists & Aerospace Workers v. Organization of Petroleum Exporting Countries,* 477 F.Supp. 553, 567 (C.D.Cal.1979), *aff'd,* 649 F.2d 1354 (9th Cir. 1981), *cert. denied,* 454 U.S. 1163, 102 S.Ct. 1036, 71 L.Ed.2d 319 (1982).

> The control over a nation's natural resources stems from the nature of sovereignty. By necessity and by traditional recognition, each nation is its own master in respect to its physical attributes. The defendants' [OPEC's] control over their oil resources is an especially sovereign function because oil, as their primary, if not sole, revenue-producing resource, is crucial to the welfare of their nations' peoples.

*Id.* at 568. *Cf. Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum,* 577 F.2d 1196 (5th Cir.1978), *cert. denied,* 442 U.S. 928, 99 S.Ct. 2857, 61 L.Ed.2d 296 (1979) (ownership of lands disputed by foreign sovereigns is a political question of foreign relations).

Grynberg asks this court to order a redistribution of the concession rights to natural resources in the Republic of Kazakhstan by ordering British Gas to convey at least 20% or even all of its rights in the Karachaganak Field to Grynberg. Meanwhile, the Republic of Kazakhstan has made an exclusive concession award to British Gas/AGIP. To enable Grynberg to obtain the relief it seeks, this court must necessarily nullify the subsequent concession award to British Gas/AGIP, and prohibit any redistribution subsequent to the court's order.

As shown above, there exists a legal relationship between the Republic of Kazakhstan and its mineral resources, which, as a matter of international law, and presumably federal common law governing international relations, persists even after it conveys away any concession interest. This relationship exists by right of sovereignty. "The Republic of Kazakhstan shall have in its exclusive ownership, as a foundation of its national independence, the land and its mineral wealth...." *Constitutional Law Regarding National Independence of the Republic of Kazakhstan, of December 16, 1991,* ch. 4, art. 11, *reprinted in*

*Russia and the Republics—Legal Materials,* (1992) (John Hazard & Vratislav Pechota, eds.). Part of that ownership and control also includes its exclusive concession grant to British Gas/AGIP. To award concession rights to Grynberg, as prayed for in its Original Petition, the court would necessarily have to interpose itself between Kazakhstan and its resources. The relief Grynberg seeks on the face of its petition must dishonor the legal relationship that the Kazakhis have established between themselves and their resources.

Thus, the court concludes that any claim of interest in real property located in a foreign sovereign nation which is asserted over and above the rights of that sovereign is a claim which must derive, if at all, from federal law governing international relations. Undoubtedly, the exclusive right of Kazakhstan to control its minerals would be a defense to any claim for specific performance. At the same time, however, Grynberg must establish a right to the Karachaganak Field as part of its well-pleaded claim for specific performance. The element of Grynberg's specific performance claim which alleges an interest in the Kazakhstan property, over and above the rights of Kazakhstan, can only have its origin in federal international relations law, or it simply does not exist. Consequently, to establish its "right to the remedy," Grynberg will have to show that its construction of the federal law of international relations entitles it to an order compelling specific performance over a foreign sovereign's mineral property.

This case parallels *Republic of Philippines v. Marcos,* 806 F.2d 344 (2d Cir.1986). In *Republic of Philippines,* a foreign sovereign sued "under a theory more nearly akin to a state cause of action for conversion, requiring the imposition of a constructive trust or equitable lien upon the 'ill-gotten' gains" of the defendant. *Id.* at 354. The Second Circuit held that the claim raised "as a necessary element, the question of whether to honor the request of a foreign government that the American courts enforce the foreign government's directives to freeze property in the United States subject to future process in the foreign state." *Id.* This created federal question jurisdiction, "regardless of whether the overall claim is viewed as one of federal or state common law." *Id.* Similarly, Grynberg's Original Petition raises, "as a necessary element, the question of whether to [*dishonor*] the [choice] of a foreign government" to allocate property within its own borders.

**c. A well-pleaded claim for injunction under Texas law requires allegations that depend upon the application of federal common law governing international relations**

*i. To state a claim for injunction in Texas, a well-pleaded petition must negative all reasonably inferable hypotheses which could prevent relief*

A second basis for finding that Grynberg has alleged (or must allege) a federal issue as part of its claim for relief derives from the requirements for injunctive relief in Texas. Grynberg seeks an injunction ordering British Gas to transfer title to Grynberg. In Texas, "[i]njunctive relief is an extraordinary remedy, and a party seeking it must show himself clearly to be entitled to it." *Southwestern Associated Tel. Co. v. City of Dalhart,* 254 S.W.2d 819, 826 (Tex.Civ.App.—Amarillo 1952, writ ref'd n.r.e.). "[I]n order to state a cause of action, it is necessary for the pleading to show every essential fact affirmatively to entitle the petitioner to the injunctive relief sought." *Town of Refugio v. Strauch,* 29 S.W.2d 1041, 1045 (Tex.Comm'n App.1930, holding approved). Consequently, in order to state a cause of action for injunction, the settled rule is as follows:

> As an exception to the general rule of pleading that it is not necessary to anticipate defenses in the petition, a petition for injunctive relief must state all, and negative all, that is necessary to establish the right to an injunction. The allegations of fact must be sufficient both to negative every hypothesis on which the act sought to be enjoined could be found to be lawful and to negative every reasonable inference that may be drawn from the facts stated that would prevent the grant of injunctive relief.

44 *Tex.Jur.3d Injunction* § 94 (1985); accord *Southwestern Chem. & Gas Corp. v.*

*Southeastern Pipe Line Co.,* 369 S.W.2d 489, 495 (Tex.Civ.App.—Houston 1963, no writ); *McBride v. Aransas County,* 304 S.W.2d 450, 453 (Tex.Civ.App.—Eastland 1957, writ ref'd n.r.e.); *Pecos County Water Control and Improvement Dist. v. Williams,* 271 S.W.2d 503, 507 (Tex.Civ.App.—El Paso 1954, writ ref'd· n.r.e.); *Rawson v. Brownsboro Indep. Sch. Dist.,* 263 S.W.2d 578, 581 (Tex.Civ.App.— Dallas 1953, writ ref'd n.r.e.); *Southwestern Associated Tel. Co.,* 254 S.W.2d at 826; *Coleman v. Wright,* 136 S.W.2d 270, 272 (Tex.Civ. App.—Waco 1940, no writ); *Refrigeration Discount Corp. v. Meador,* 134 S.W.2d 331, 332 (Tex.Civ.App.—Eastland 1939, no writ); *Powell v. City of Baird,* 132 S.W.2d 464, 468 (Tex.Civ.App.—Eastland 1939, no writ); *Sneed v. Ellison,* 116 S.W.2d 864, 866–67 (Tex.Civ.App.—Amarillo 1938, writ dism'd).

██ The requirement that the plaintiff's petition for injunction must negative certain inferences *is not simply a technical pleading rule.* Instead, the negativing allegations are necessary to state a claim for injunctive relief. In *Refrigeration Discount Corp.,* the appeals court reversed the lower court's grant of injunction, stating:

> A careful consideration of the allegations in the petition discloses that it fails in other material respects to *state grounds for the relief sought.* The averment of material and essential elements are wholly insufficient to negative in any definite way every inference of the existence of other facts under which the petitioner would not be entitled to the relief sought.

134 S.W.2d at 332 (emphasis added). In *Sneed,* the court reasoned:

> It is elementary that a party who seeks injunctive relief must both plead *and prove* such facts as will show that party entitled to such relief.... On the question of the necessity of pleading, *which is the basis for the proof,* "the petition for injunction should state all, and negative all, *which is necessary to establish a right.*

116 S.W.2d at 866 (emphasis added, citations omitted). It is part of the plaintiff's case and the plaintiff's burden to *disprove* any lawful explanations for the defendant's behavior or any other reasonable inference that could justify denial of relief. *See, e.g., McBride,*

304 S.W.2d at 453 (in suit to enjoin county from road grading of plaintiff's land, plaintiffs had burden to disprove legal theory that land had been dedicated).·· Thus, in an injunction suit under Texas substantive law, many things which might otherwise be characterized as defenses are really not defenses but essential elements of the plaintiff's prima facie case.

*ii. Unequivocally, Texas state law alone determines what is and what is not necessary to state a claim for purposes of the "well-pleaded complaint" rule*

Holding that such negativing pleadings are in fact essential elements of Grynberg's injunction claim appears to conflict with the settled rule that jurisdiction is "determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 725, 58 L.Ed. 1218 (1914). This apparent conflict is illusory. This statement from *Taylor* and others like it are based on the premise that negativing potential defenses usually is not required to state a claim for relief. *See, e.g., Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 153–54, 29 S.Ct. 42, 44, 53 L.Ed. 126 (1908) (anticipating defenses is inconsistent with "any known rule of pleading"). Texas has chosen to make negativing certain facts *part of the plaintiff's prima facie case for injunction,* and therefore, such allegations form part of the "well-pleaded complaint" for federal question purposes.

To hold otherwise (and say that the well-pleaded complaint precludes jurisdiction on the basis of a defense even when the State of Texas has made negativing the defense part of the plaintiff's prima facie case) would squarely violate *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *Erie* does not simply apply to diversity cases. *First Southern Fed. Sav. & Loan Assoc. of Mobile, Ala. v. First Southern Sav. & Loan Assoc. of Jackson County, Miss.,* 614 F.2d 71, 73 (5th Cir.1980). "The *Erie* result applies to any issue 'governed by state law

**1362**

operating of its own force,' regardless of the jurisdictional basis." *Id.* The claims seeking an injunction to compel specific performance and other injunctive relief are *Smith*-type cases: a state law claim with a substantial federal issue as an essential element. State law necessarily controls what elements are required to properly state a claim under state law. *See Franchise Tax Bd.,* 463 U.S. at 13–14, 103 S.Ct. at 2848 (California law determined the elements of a tax levy cause of action where jurisdiction was alleged on the basis of the presence of a federal issue in a state law claim).

To avoid any confusion, the court would like to reemphasize what it has just said. Federal question jurisdiction cannot be predicated on a federal defense. In Texas, however, negating certain defenses is part of the well-pleaded complaint for an injunction. As such, what might appear to be federal defenses only can in fact be elements of Grynberg's prima facie case, and alleging the nonexistence of those defenses can be necessary to state a claim.

*iii. To negative all reasonable inferences and hypotheses which might be fatal to injunctive relief, Grynberg's Original Petition must raise three substantial issues of international law*

To properly state a claim for injunction, Grynberg would have to negative every hypothesis by which British Gas's actions could found to be lawful and negative every reasonable inference that could be drawn from the facts that would prevent the grant of relief. The court can identify at least three issues of federal common law governing international relations that Grynberg's well-pleaded complaint for an injunction under Texas state law would have to raise.

First, it is reasonably inferable from the Original Petition that granting an injunction would violate the international legal principles discussed above relating to the control of a foreign sovereign over its own resources. An injunction would require this court to nullify Kazakhstan's allocation of concession rights to the Karachaganak Field. The court may be incorrect in its earlier analysis that a simple claim for specific performance, standing alone, must raise this issue as part of a well-pleaded complaint. If so, then this international relations legal issue must at least arise by way of defense. The existence of this issue, which would prevent the granting of an injunction, is without a doubt reasonably inferable from the allegations in Grynberg's Original Petition. Grynberg's *injunction* claim must therefore negative this issue of federal law to be well-pleaded.

A second federal issue that Grynberg's well-pleaded complaint must negative is the application of the "act of state doctrine." As discussed earlier, the federal act of state doctrine, if applicable, requires a federal court to give validity to official acts of foreign sovereigns. "In every case in which we have held the act of state doctrine applicable, the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l,* 493 U.S. 400, 405, 110 S.Ct. 701, 704, 107 L.Ed.2d 816 (1990).

Even a cursory glance at Grynberg's Original Petition reasonably suggests that the act of state doctrine could prevent relief. The petition alleges that the Republic of Kazakhstan awarded all rights to British Gas/AGIP and Grynberg wants some or all of those rights. If it is not explicitly stated in Grynberg's Original Petition, it is nevertheless a reasonable inference that the Kazakhi award is exclusive. If it applies, the act of state doctrine would establish that British Gas's retention of its interest in the Karachaganak Field against Grynberg's demand is lawful simply because an official act of the Republic of Kazakhstan says it is. Grynberg must "negative every hypothesis on which an act sought to be enjoined could be found to be lawful." Furthermore, applicability of the act of state doctrine would prevent the grant of injunctive relief because it demonstrates that any order of this court ordering a redistribution could simply be nullified by an official act of Kazakhstan. Therefore, to be entitled to injunctive relief under Texas law, Grynberg must negative the applicability of

the act of state doctrine in its Original Petition.

A third issue of federal international relations law that must appear in Grynberg's well-pleaded complaint involves state recognition and succession. The rights, if any, that Grynberg acquired in the Karachaganak Field were acquired through the force of the AMI agreement. The *Soviet* Republic of Kazakhstan issued a formal protocol officially approving formation of the consortium on June 23, 1990. The AMI agreement between British Gas and Grynberg was created August 14, 1990. As Grynberg's Original Petition makes clear, all of these events preceded the fall of the Soviet central government in December, 1991.

To prevail on its claim of right to British Gas's interest in the Karachaganak Field, Grynberg will have to negative the very reasonable hypothesis that any prospective allocation of concession rights to the Karachaganak Field by the *Soviet* Republic of Kazakhstan simply does not survive the creation of the *independent* Republic of Kazakhstan. Whether Grynberg's alleged rights survive a change of sovereigns presents a question of federal international relations law. While a successor state usually succeeds to contract obligations of the former state, there are legitimate disputes about the validity and fairness of this rule, especially with respect to concession agreements. *Restatement (Third) of the Law of Foreign Relations of the United States* § 209 cmt. f (1987).

In sum, the court finds that Grynberg's claims for specific performance and other injunctive relief raise issues of federal common law governing international relations on the face of a well-pleaded complaint. Standing alone, the specific performance claim requires on its face that the court interpose itself between Kazakhstan and its resources. When coupled with the Texas requirement that a well-pleaded petition for an injunction must negative certain defenses, it is clear that at least three substantial issues of federal law controlling international relations are essential to state a claim for injunction: (1) the exclusive sovereignty of a foreign sovereign over its resources does not preclude an injunction; (2) the act of state doctrine does not bar the injunction; and (3) the change of sovereigns in Kazakhstan does not preclude relief. Each of these federal issues is a substantial federal issue in an otherwise state law claim, creating federal question jurisdiction under *Smith.*

**d. The *well-pleaded* complaint rule means that the failure of Grynberg's Original Petition to raise these international relations issues does not defeat federal jurisdiction**

▬▬ Grynberg may contend that even if the allegation of these federal issues is essential to state a claim under state law, Grynberg has failed to do so, and therefore no federal issue is alleged on the face of the complaint. That argument ignores the fact that the well-pleaded complaint rule requires examination of the *well-pleaded* complaint; i.e. jurisdiction is determined from what allegations are necessary to properly state a claim under the controlling law. "[I]t is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd.,* 463 U.S. at 22, 103 S.Ct. at 2853. The court may have to determine whether, in fact, the plaintiff's complaint is well-pleaded. *Aquafaith Shipping, Ltd.,* 963 F.2d at 808. "A federal court is not confined to the letter of the petition. The court may find that the plaintiff's claims arise under federal law, even though the plaintiff has not characterized them as federal claims." *Id.* The fact that Grynberg has failed to make allegations which are necessary to properly state a claim under state law does not preclude this court from supplying the missing allegations. As shown above, any missing allegations necessarily relate to international relations and therefore are *necessarily federal,* simply because there is no such thing as the state law of international relations. Grynberg's complaint, if *well-pleaded,* supports federal jurisdiction.

**e. Federal question jurisdiction exists over an alternatively pleaded federal claim**

▬▬ Grynberg also appears to argue that the claim for specific performance is

alleged only in the alternative, and therefore cannot form the basis of a federal question. If *separate theories* of the same claim do not each rely upon federal law, then that claim does not arise under federal law. *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 810–12, 108 S.Ct. 2166, 2175, 100 L.Ed.2d 811 (1988) (construing the meaning of "arising under" for appellate patent jurisdiction under 28 U.S.C. § 1295(a), which is interpreted exactly like the "arising under" language in 28 U.S.C. § 1331). At the same time, however, *separate claims* are analyzed under the principles of pendent jurisdiction described in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and codified in 28 U.S.C. § 1367. *See Merrell Dow Pharmaceuticals,* 478 U.S. at 817 n. 15, 106 S.Ct. at 3236–37 n. 15.

This court does not interpret Grynberg's argument to stand for the patently meritless proposition that pleading claims in the alternative precludes jurisdiction even if one claim is a proper federal question. Grynberg can therefore only be arguing that the breach of contract for money damages claim, the specific performance claim, and the injunction claim are merely separate theories of the same claim. A complaint for breach of contract seeking money damages, specific performance, and other injunctive relief alleges three separate *claims* for purposes of *Christianson.* Both an action for damages and an action for specific performance do rely on some common elements, such as a breach of contract. The court's discussion above, however, demonstrates that the elements necessary to entitle the plaintiff to each remedy differ in several respects.

3. *Grynberg's well-pleaded conversion claim must allege issues of federal law governing foreign relations*

a. **Conversion requires "unlawful and unauthorized" dominion over personal property in which Grynberg had an interest**

 The court believes that Grynberg's well-pleaded claim for conversion also presents an issue of federal law within an otherwise state law claim. To state a claim for conversion, a plaintiff must allege the unauthorized and unlawful assumption and exercise of dominion and control by the defendant over the personal property of the plaintiff, to the exclusion of the plaintiff's rights. *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 447 (Tex.1971); *Catania v. Garage de le Paix, Inc.,* 542 S.W.2d 239, 241 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.); *Rice v. Lambert,* 408 S.W.2d 287, 291 (Tex. Civ.App.—Corpus Christi 1966, no writ); *Frazier .v. Williams,* 359 S.W.2d 213, 214 (Tex.Civ.App.—Eastland 1962, no writ). "To constitute a conversion, it is not necessary that there be a manual taking of the property in question." *Waisath,* 474 S.W.2d at 447. The plaintiff must establish some interest in the property at the time of the alleged conversion. *Catania,* 542 S.W.2d at 241.

b. **To establish an "unlawful and unauthorized" dominion, Grynberg must allege issues of federal international relations law**

Based on Grynberg's Original Petition, Grynberg's conversion claim is that British Gas converted Grynberg's intangible rights in the Karachaganak Field by causing the Kazakhis to award those rights to British Gas and AGIP. For Grynberg to assert a well-pleaded claim against British Gas, it must allege that the receipt of the contract rights by British Gas (and AGIP) was "unlawful and unauthorized." Grynberg alleges that it was Kazakhstan which awarded all rights to British Gas and AGIP. In order to properly plead that receipt by British Gas and AGIP was unlawful and unauthorized, Grynberg must plead that the award itself was unlawful and unauthorized.

Consequently, Grynberg must allege the illegality and unauthorized nature of an official Kazakhi disposition of intangible contract rights relating to mineral resources locate in Kazakhstan. Therefore, Grynberg must establish the invalidity of what Kazakhstan did as part of its prima facie case. The allegation that the Republic of Kazakhstan's award of its own property was unlawful and unauthorized is by itself an allegation implicating federal international relations law. Any right that Grynberg has to demonstrate the unlawfulness of the acts of a foreign sover-

eign can only have its origin in international relations law. Whether one characterizes the question as an "act of state" issue or, more likely, as an issue over the power of a foreign sovereign to control its own resources, it is apparent that the "unlawful and unauthorized" element of the Texas tort of conversion require that these international relations law allegations appear on the face of a well-pleaded complaint.

Undoubtedly, application of the "act of state doctrine" or the rule which respects foreign sovereignty over mineral resources would be useful in defending this lawsuit and could be characterized as a defense. That fact alone does not make them issues *purely* of defense any more than it made proving the constitutionality of the statute in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), an issue purely of defense. In *Smith*, a shareholder sought to enjoin the corporation from investing pursuant to a statute the shareholder alleged was unconstitutional. Establishing the constitutionality of the statute was a defense in the sense that it defeated the plaintiff's case. At the same time, however, alleging the wrongfulness of the defendant's conduct was an essential element of the plaintiff's case. The plaintiff demonstrated wrongfulness by alleging the unconstitutionality of the federal statute upon which the defendant relied. Similarly, alleging the unlawfulness of the Kazakh award is part of Grynberg's well-pleaded case.

As discussed above, the failure of Grynberg to include these allegations does not defeat jurisdiction. The "well-pleaded complaint" rule requires the court to determine jurisdiction only from those allegations necessary to state a claim. To state a claim for conversion, Grynberg must allege the unlawful and unauthorized nature of the acts of a foreign sovereign with respect to its own minerals. As such, the well-pleaded conversion claim requires resolution of issues of federal international relations law and supports federal question jurisdiction.

**c. Grynberg must allege questions of international law to allege that it has an interest in the converted property**

To establish that it had an interest in the intangible rights relating to the Karachaga-

nak Field, Grynberg must allege two related issues of international relations law. First, as the court has already concluded, claims of right to foreign property over the exclusive right of the foreign sovereign must derive, if at all, from federal law governing international relations. Second, Grynberg's purported interest in the Karachaganak Field is based on the Kazakhi protocols approving formation of the initial consortium. Any intangible interest relating to the Karachaganak Field that Grynberg had at the time of the conversion descended from a Kazakhi "act of state." Because application of the "act of state doctrine" is essential to Grynberg's rights, Grynberg's well-pleaded complaint must rely on the allegation of a substantial question of international relations law, which is necessarily federal.

**E. Supplemental Jurisdiction Exists over All Other Claims and Parties in this Case**

The court has determined that federal question jurisdiction exists over the specific performance, injunction, and conversion claims. Under 28 U.S.C. § 1367(a), supplemental jurisdiction exists "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder of additional parties."

To be part of the "same case or controversy" under Article III, each separate claim "must derive from a common nucleus of operative facts." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). All of Grynberg's contract and tort claims against Gregory and British Gas, and Grynberg's declaratory judgment action against ARCO, BP, and TransWorld, derive from the same sequence of events. Supplemental jurisdiction exists over all remaining parties and claims for which there is no primary federal jurisdiction.

**IV. CONCLUSION**

In sum, removal on the basis of diversity of citizenship is improper because Gregory, a

Texas resident, is not fraudulently joined at least on the fraud claim. Removal is proper on the basis of federal question. The specific performance, injunction, and conversion claims, if well-pleaded, raise substantial questions of federal law in otherwise state law causes of action. Supplemental jurisdiction exists over the rest of the parties and claims in the case.

IT IS, therefore, ORDERED that Grynberg Production Corporation's Motion to Remand is DENIED. IT IS further ORDERED that all motions made by all parties in connection with the resolution of Grynberg Production Corporation's Motion to Remand are DENIED. As per the court's order of December 18, 1992, Grynberg Production Corporation shall have thirty days from the date of this order to respond to the motions to dismiss by British Gas, p.l.c., Jack L. Gregory, and British Petroleum Operating Company, Ltd.