**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 11/18/96**

**TENTH CIRCUIT**

---

E. GERALD SMITH, personally and as
president of B&G ENTERTAINMENT,
INC.,

      Plaintiffs-Appellants,

v.

BLOCKBUSTER ENTERTAINMENT
CORPORATION, BLOCKBUSTER
VIDEOS, INC., MAJOR VIDEO SUPER-
STORES, INC., f/k/a MAJOR VIDEO,
INC., dba MAJOR VIDEO,

      Defendants-Appellees.

No. 95-2232

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. Civ. 94-1395-M)**

---

Robert L. Pidcock, Albuquerque, New Mexico, for the Plaintiffs-Appellants.

John F. Verhey, Rudnick & Wolfe, Chicago, Illinois, (William M. McErlean, Rudnick &
Wolfe, Chicago, Illinois, and R. E. Thompson and Angelo J. Artuso, Modrall, Sperling,
Roehl, Harris & Sisk, P.A., Albuquerque, New Mexico, with him on the brief) for
Defendants-Appellees.

---

Before **ANDERSON**, Circuit Judge, **MCWILLIAMS**, Senior Circuit Judge, and **ENGEL**[*]**,** Senior Circuit Judge.

---

**McWILLIAMS,** Senior Circuit Judge**.**

---

On October 17, 1994, E. Gerald Smith, ("Smith"), personally and as president of B&G Entertainment, Inc., ("B&G"), filed an action in the Second Judicial District, County of Bernalillo, State of New Mexico, naming as defendants the following: (1) Blockbuster Entertainment Corporation ("Blockbuster Entertainment"); (2) Blockbuster Videos, Inc., ("Blockbuster Videos"); and (3) Major Video Superstores, Inc., ("Major Video"), formerly known as Major Video, Inc., doing business as Major Video.

In the complaint Smith alleged that he was a resident of Texas but was formerly a resident of New Mexico, and that he was the president of B&G at the time of the acts alleged in the complaint. It was further alleged in the complaint that B&G was a New Mexico corporation doing business in New Mexico.

As concerns the three defendants, it was alleged in the complaint that Blockbuster Entertainment was a Delaware corporation with its principal place of business in Fort Lauderdale, Florida, and that it was doing business at all times relevant to the complaint in New Mexico through Blockbuster Videos. It was further alleged in the complaint that Blockbuster Videos is a Texas corporation with its principal place of business in Fort

---

[*]Honorable Albert J. Engel, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

Lauderdale, Florida, and that it was licensed to do business and was, in fact, doing business in New Mexico at all times material to the complaint. It was also alleged in the complaint that Blockbuster Videos was the alter ego of Blockbuster Entertainment[1]. As concerns Major Video, it was alleged in the complaint that it was a Nevada corporation and was doing business in New Mexico through franchise stores at all times relevant to the complaint.

The plaintiffs went on to allege in their complaint that as of 1989, and prior thereto, they were the owners and operators of four video rental stores in Albuquerque, New Mexico, and were in the process of developing a rental store in Santa Fe, New Mexico. These stores, according to the complaint, were owned and operated as "Major Video" stores under a franchise agreement the plaintiffs had with Major Video. The agreement also granted plaintiffs a territorial franchise right for the State of New Mexico, excluding Las Cruces. In this regard it was alleged that in January, 1989, Blockbuster Entertainment purchased Major Video.

It was alleged in the complaint that in the late summer of 1989 the plaintiffs entered into negotiations to sell their rental stores and franchise rights to one Roger Ellis of El Paso, Texas, who was himself a franchisee of Major Video in El Paso, Texas. We

---

[1]In paragraph 4 of the complaint it is alleged that the "two entities [i.e., Blockbuster Entertainment and Blockbuster Videos] share officers, directors and addresses in such a way as to not have separate identities for purposes of the actions alleged in this complaint."

are advised by the complaint that the negotiations between the plaintiffs and Ellis had proceeded to the point that drafts of a sale agreement had been exchanged and that the parties had agreed upon a purchase price of $3,500,000.00. It was further alleged in the complaint that the franchise agreement between plaintiffs and Major Video allowed the franchisee to sell his rental stores, conditioned on the approval of Major Video. In this regard plaintiffs also allege that they sought approval for the proposed sale, and that Major Video consented thereto.

Paragraphs 12, 13 and 14 in the complaint are perhaps the heart of the complaint, and read as follows:

> 12. Blockbuster and its agents and employees, with no legal or contractual right to do so, refused to approve the transaction between Plaintiffs and Mr. Ellis, without the addition of Blockbuster's improper requirement that Mr. Ellis convert all of the Major Video stores to Blockbuster stores. The cost of such a conversion was estimated to be approximately $150,000.00 per store.

> 13. Douglas M. Kinney, the Vice President for Franchise Development for Blockbuster, wrote a letter dated August 23, 1989 to Roger Ellis in which Mr. Kinney approved the acquisition by Mr. Ellis of Plaintiffs' stores., but the approval was "subject to them being converted to BLOCKBUSTER within the next twelve (12) months." Such a conversion would add approximately $600,000.00 in expenses to the transaction for Mr. Ellis. This letter was not disclosed to Plaintiffs.

> 14. Blockbuster intentionally and fraudulently concealed its actions from Plaintiffs. Plaintiffs did not learn of the deceit and improper conditions placed on the sale by Blockbuster until on or after October 18, 1991.

The plaintiffs then went on to allege that the sale to Ellis was not consummated because of the improper conditions imposed by Blockbuster Entertainment, and that they eventually sold the rental stores and franchise rights to another party at a figure much less than the $3,500,000.00 agreed to by plaintiffs and Ellis.

Based on these allegations, the plaintiffs asserted six claims: (l) a claim based on tortious interference with a prospective contractual relationship apparently seeking judgment only against Blockbuster Entertainment; (2) a claim based on breach of contract seeking judgment against all defendants; (3) a claim based on prima facie tort seeking judgment against Blockbuster Entertainment and Major Videos; (4) a claim based on breach of fiduciary duty seeking judgment against Blockbuster Entertainment and Major Videos; (5) a claim based on fraud seeking judgment against Blockbuster Entertainment and Major Videos; and (6) a claim based on constructive fraud seeking judgment against all defendants.

It would appear that all three defendants were served some time in November, 1994 with a copy of the complaint and a summons to respond thereto within 30 days thereafter.[2]  Within 30 days thereafter, a Notice of Removal was filed on December 7, 1994, with the United States District Court for the District of New Mexico.  In the opening paragraph of the notice it was alleged that "Viacom, Inc. as successor in interest

_____

[2]In response to plaintiffs' motion to remand the defendants stated that Blockbuster Entertainment and Blockbuster Videos were served with a copy of the complaint on November 8, 1994, and that Major Video was served on November 28, 1994.

by merger to Blockbuster Entertainment Corporation, Blockbuster Videos, Inc., and Major Video Superstores, Inc., by their attorneys, respectfully petition this Court pursuant to 28 U.S.C. §§ 1441 and 1446. . . .'"     In the notice it was also alleged that Viacom, Inc. was a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York.

As grounds for removal, it was alleged in the Notice of Removal that the amount in controversary exceeded the sum of $50,000.00 and that the plaintiffs had "fraudulently joined" Blockbuster Videos as a defendant for the "purpose of destroying diversity," and that, in reality, there was "complete diversity of citizenship among the parties properly named in this action . . . ." In this connection, it was also alleged in the notice that the "Plaintiffs do not make any substantive allegations of wrong doing against Blockbuster Videos, Inc. which, in any event, is a wholly-owned subsidiary of another entity not a party to this action and which had no contact with either Plaintiff." The notice was signed by an attorney in a local Albuquerque, New Mexico law firm, as "Attorneys for Blockbuster Entertainment Corporation."

On December 23, 1994, the defendants filed in the United States District Court for the District of New Mexico a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief could be granted, alleging, *inter alia*, that all tort claims were barred by New Mexico's four year statute of limitations and that none of the defendants had breached any contract with the plaintiffs. On January 5, 1995,

the plaintiffs filed a response to the defendants' motion to dismiss, alleging, *inter alia*, that "[i]t is impossible to separate one alleged entity from the other" and noting that in the instant case the defendants "claim to be one entity."

The following day, January 6, 1995, plaintiffs filed a motion asking the federal district court to remand the case to the Second Judicial District Court, County of Bernalillo, State of New Mexico. As grounds for a remand, the plaintiffs asserted the following: (1) all of the defendants did not join in the Notice of Removal; and (2) there was not complete diversity of citizenship among the plaintiffs and defendants. As concerns the first ground, plaintiffs, in their supporting brief, pointed out that the Notice of Remand was signed by an attorney for "Blockbuster Entertainment Corporation," and not for either "Blockbuster Videos" or "Major Video." As concerns the second ground, the plaintiffs observe that, having alleged "fraudulent joinder," the burden is on the defendants to demonstrate "fraudulent joinder" by clear and convincing evidence, citing *Grynberg Production Corp. v. British Gas*, *P.L.C.*, 817 F. Supp. 1338, 1346 (E.D.Tex. 1993), and suggesting that the defendants had not met that burden.

On January 23, 1995, the defendants filed a memorandum of law in response to plaintiffs' motion to remand. In the memorandum the defendants assert that all three defendants did join in the Notice of Removal despite the "signature line" at the end of the Notice of Removal. As concerns "complete diversity," the defendants in their response argue that based on the complaint there is no way plaintiffs could obtain a judgment

- 7 -

against Blockbuster Videos since the complaint sets forth no claim of misconduct by Blockbuster Videos and that plaintiffs' claim that Blockbuster Video is the "alter ego" of Blockbuster is legally insufficient.[3]

On July 10, 1995, the district court entered an order in connection with the plaintiffs' motion to remand. In that order the district judge stated that there were "insufficient facts" in the record to allow him to rule on the matter, and ordered the *parties* to "immediately provide evidence as to the date plaintiff E. Gerald Smith moved from New Mexico to Texas." The order concluded with a statement that if the *plaintiffs* failed to provide such evidence within ten days, such failure would be construed as consent to deny the motion to remand.

On July 19, 1995, the plaintiffs filed a response to the district court's order of July 10, 1995, attaching thereto the affidavit of E. Gerald Smith wherein he stated that he permanently moved from New Mexico to Texas on May 15, 1990, and has resided in Texas since that date.

On August 17, 1995, the district court entered another order in connection with the plaintiffs' motion to remand. The district court in that order stated at the outset that there were "insufficient facts in the record concerning the nondiverse defendant, Blockbuster

---

[3]Attached to the memorandum was an affidavit of Michael R. Daigle wherein Daigle described the relationship between Blockbuster Entertainment and Blockbuster Videos, which, according to counsel, established that Blockbuster Videos was not the alter ego of Blockbuster Entertainment.

Videos, Inc." Accordingly, the judge ordered that plaintiffs, not Blockbuster Entertainment or either of the other defendants, "immediately provide the Court with a brief containing specific factual allegations, as well as, applicable law pertaining to the joinder of Blockbuster Video, Inc." Again, the judge stated in his order that if plaintiffs did not file such a brief within fifteen days, such failure would be construed as "consent to deny the motion to remand."

On September 1, 1995, the plaintiffs filed with the district court a motion for an extension of time to file a brief concerning the status of Blockbuster Videos, stating, *inter alia*, the difficulty in determining the exact relationship between Blockbuster Entertainment and Blockbuster Videos and the need for discovery. On September 15, 1995, the defendants filed a brief in opposition to any such extension of time.

On September 27, 1995, the district court filed a memorandum opinion and order wherein it first found that the plaintiffs' motion for remand was not "well taken" and was therefore denied. The district court next held that the motion for an extension of time "is no longer an issue and is hereby dismissed." The district court then went on to conclude that the defendants' "motion to dismiss is well taken" and therefore granted it. In granting the motion to dismiss, the district court did give its reasons therefor, holding that the tort claims were barred by the New Mexico four year statute of limitations and that the breach of contract claims against Blockbuster Entertainment and Major Videos were not properly pleaded. On that same date the district court entered a formal judgment granting

defendants' motion to dismiss and dismissing all of plaintiffs' claims with prejudice. Plaintiffs appeal. We reverse.

The first question to be answered is whether the district court's order denying plaintiffs' motion to remand on the grounds that it was not "well taken" can be affirmed. If it cannot be upheld, then the subsequent order of the district court granting the defendants' motion to dismiss and dismissing all of plaintiffs' claims with prejudice are, in hindsight, at least, premature.[4]

As indicated, in denying the plaintiffs' motion to remand, the district court, insofar as we can tell from the record before us, simply stated that the motion was not "well taken." Nothing more. As we read the record before us, the plaintiffs advanced basically two grounds for their motion to remand: (l) the Notice for Removal was signed by an attorney who stated that he represented Blockbusters Entertainment, but did not state that he represented the other defendants, Blockbuster Videos and Major Video[5]; and (2) there

---

[4]We reject defendants' suggestion that since plaintiffs did not specifically mention in their notice of appeal the district court's denial of their motion to remand, they are somehow foreclosed from raising the matter on appeal. The notice of appeal was directed to the district court's judgment of September 27, 1995, which dismissed all of plaintiffs' claims against the defendants with prejudice, and made no mention of plaintiffs' motion to remand. Be that as it may, if the district court improperly denied plaintiffs' motion to remand, the district court thereafter had no jurisdiction to enter its subsequent order and judgment dismissing plaintiffs' claims with prejudice. Such, under that scenario, would be up to the New Mexico state courts. Lack of jurisdiction can, of course, be raised at any time. 28 U.S.C. § 1447(c) (1994).

[5]Plaintiffs cite *Matter of Amoco Petroleum Additives Co.,* 964 F.2d 706, 711 (7th Cir. 1992*)* for the proposition that the general rule is that all defendants must join in a Notice of Removal of a state court action to federal court.

was not complete diversity of citizenship since Smith and Blockbuster Video were both residents and citizens of Texas. In this regard, we should note, additionally, that by its order of July 10, 1995, the district court, apparently *sua sponte*, wanted some evidence that Smith was, in fact, a resident and citizen of Texas, and not a citizen and resident of New Mexico. Evidently the district court had some concern about this question.

As indicated, the district court denied plaintiffs' motion to remand on the ground that the motion was not "well taken." That, so far as we can tell from the record before us, is the only reason given for denying the motion to remand. Such is insufficient to permit us to make a meaningful review of the district court's order denying plaintiffs' motion to remand.

The district court did not address plaintiffs' argument that the "signature line" at the end of the Notice of Removal was insufficient to show that all three defendants joined in the notice. Further, though the district court did not address the matter, it apparently, at one time at least, had some doubt that Smith was a resident and citizen of Texas, which would mean that if Smith was in fact a citizen and resident of New Mexico, rather than Texas, then there would be complete diversity. Finally, we do not know whether the district court was of the view that Blockbuster Videos had been "fraudulently joined" as a party in an effort to defeat a complete diversity of citizenship.

In sum, from the record before us we do not know the reasoning of the district court when it denied plaintiffs' motion for remand on the grounds that it was not "well

- 11 -

taken," without explanation. Such being the case, that order cannot be affirmed. We are not herein indicating that the motion to remand should be granted. We are holding that the motion for remand should be given further consideration, and that the district court, after allowing reasonable discovery, should explain the basis for its action, whatever that action may be. Needless to say, we regard the relationship between state and federal courts to be a most important one.

Judgement reversed and case remanded for further consideration consistent with the views herein expressed.